## J. H. GODWIN v. HOOVER HINNANT.

(Filed 20 May, 1959.)

**1. Reference § 14a—**

A provision in an order of re-reference that the parties should have twenty days from the referee's report in which to file exceptions cannot have greater force than the statutory limitation, G.S. 1-195, and does not impair the discretionary authority given the court by G.S. 1-152 to extend the time for filing such exceptions.

**2. Same—**

Defendant may waive his right to trial by jury on appeal in a compulsory reference by failing to comply with the statutory procedure for the preservation of such right, and likewise the plaintiff may waive defendant's failure to follow the statutory procedure by failing to challenge the sufficiency of defendant's exceptions and by failing to object to the submission of the issue to the jury.

**3. Same—**

An exception to an order of the court extending the time for filing exceptions to the report of the referee is not a challenge to the sufficiency of defendant's exceptions to the findings or to the submission of the issue to the jury.

**4. Reference § 9—**

The objective of a compulsory reference is to eliminate uncontroverted items so as to simplify the scope of the jury's inquiry, and therefore the exceptions to the findings should be specifically directed to those relating to the particular items controverted, and a party may not take broadside exceptions to the findings.

**5. Account § 2—**

In an action on an account the burden is upon the creditor to prove the correctness of each controverted charge, and the burden is upon the debtor to establish payments beyond those admitted.

**5. Account § 1—**

Ordinarily the law imposes no greater burden upon the creditor than on the debtor to keep an accurate record of the debits and credits, and it is error for the court to charge, even as a contention, that the law imposed the duty on the creditor not only to keep the records but to keep them in such manner as to disclose that they were accurate and could be relied on by the parties.

**6. Account § 2—**

    In an action on an account it is error for the court to charge that the burden is on the creditor to establish the allegations of the complaint, without applying the law to the facts in evidence, but the court should charge the jury the law applicable upon the evidence as to each controverted item. The mere statement of the contentions of the parties is insufficient.

**7. Trial § 31b—**

    Under G.S. 1-180 it is mandatory upon the court to charge the jury as to the law applicable to the various factual situations presented by the conflicting evidence, and the failure of the court to so charge the law arising upon the evidence, except in stating the contentions of the parties, must be held for prejudicial error.

APPEAL by plaintiff from *Frizzelle, J.,* January 1959 Civil Term of WILSON.

The complaint alleges balances owing plaintiff for the years 1954 and 1955 for merchandise sold and advances made by plaintiff to defendant pursuant to a contract by which defendant, as tenant, farmed plaintiff's land. The complaint does not set out the contractual provisions for the operation of the farm.

The answer merely denies the allegations of the complaint, specifically denying any debt owing by defendant to plaintiff.

At the January Term 1957 Judge Stevens, finding the taking of an account involving farming operations covering a period of two years was necessary, ordered a reference. Defendant excepted.

In June 1957 the referee, after hearings, filed his report. Summarized, he reported:

(1) Plaintiff and defendant occupied the relation of landlord and tenant in farming operations for several years prior to 1954.

(2) This relationship continued in 1954. Plaintiff, as landlord, was to furnish the land, such equipment as he owned at the beginning of the year, one-half of the fertilizer, curing oil, poison, and tobacco seeds; and supply defendant with groceries and cash necessary for defendant to operate the farm. Defendant was to furnish all labor in connection with the production and harvesting of the crop and the other half of the fertilizer, oil, poison, and seeds. The rental of a tobacco barn was to be paid one-half by each party. The crops were to be divided one-half to plaintiff, the other half to defendant. Defendant performed his part of the contract.

(3) During the year plaintiff sold groceries, made advances in cash and supplies, and furnished one-half of the fertilizer, oil, and poison to the amount of $3,260.84. Defendant paid thereon from the sale of the crops $2,072.76, leaving a balance owing of $1,188.08.

(4) The farming contract was renewed for 1955 with the modification that plaintiff should install an irrigation system, and defendant would pay for the gas and oil for its operation.

(5) Plaintiff performed his part of the 1955 contract.

(6) During 1955 it was agreed that plaintiff would acquire a tobacco harvester which defendant would use and pay plaintiff five cents per stick for tobacco so harvested. Defendant harvested 4,748 sticks with that machine.

(7) Defendant failed to harvest the corn. Plaintiff did so and credited plaintiff's account with his share, to wit, $67.50.

(8) Pursuant to the contract plaintiff made sales and advances to defendant during 1955 aggregating $3,072.79. Defendant paid from the sale of crops $2,745.93. In addition defendant was entitled to a credit of $67.50 for the corn harvested by plaintiff and $58.50 for work done for plaintiff by defendant, leaving a balance owing for that year of $200.86.

(9) No part of the balances for 1954 and 1955 have been paid.

Defendant in apt time filed exceptions to each finding of fact except the first. Except for the reference to the number of findings of fact to which the exception is addressed, they are in identical language as follows: "To the finding of fact # 3, defendant excepts and specifically demands a trial by jury for that said finding of fact is not supported by any competent evidence, and is contrary to the greater weight thereof." Exceptions were noted to the conclusions of law, and, based on his exceptions to the findings of fact, defendant tendered this issue: "What amount, if any, is the defendant Hoover Hinnant indebted to the plaintiff J. H. Godwin?"

At the January 1958 Term, Judge Paul remanded the cause to the referee with directions "to file a report herein which shall contain a statement of account showing items charged against the defendant on one side thereof and credits allowed said defendant on the other side." The order further provided that the report should be filed "not later than February 5, 1958, and that the defendant be allowed 20 days thereafter within which to file exceptions thereto." No exception was taken to this order.

On 5 February 1958 the referee supplemented his report by adding thereto a statement of the account for each year. It shows (a) debits composed of (1) purchases from plaintiff's store, (2) an itemization of expenditures for fertilizer, poison, and seed, and a charge of one-half of these items, (3) "other charges," itemized in amount, composed of cash advances made by plaintiff; and (b) credits showing the date, amount, and source of each credit.

Defendant did not, within the twenty days allowed by Judge Paul's order, file new or additional exceptions.

At the June Term 1958 plaintiff moved for an affirmance of the referee's report of 5 February 1958 for that no exception had been filed thereto. Judge Fountain, who was then presiding, overruled the motion and allowed defendant until 29 September 1958 to file further exceptions to the amended report of the referee. Plaintiff excepted to this order.

On 26 September 1958 defendant filed exceptions to the amended report. The exceptions then filed were identical with the exceptions theretofore filed.

When the cause came to trial in January 1959, the court submitted the case to the jury on these issues:

"1. What amount, if any, is the defendant Hoover Hinnant indebted to the plaintiff J. H. Godwin for the year 1954?

"2. What amount, if any, is the defendant Hoover Hinnant indebted to the plaintiff J. H. Godwin for the year 1955?"

Plaintiff took no exceptions to the submission of the issues to the jury.

After protracted consideration the jury reported they were unable to reach a unanimous verdict. The parties then stipulated they would accept a verdict by a majority. In accord with this stipulation the jury answered each issue "Nothing." Judgment was entered on the verdict and plaintiff appealed.

*Lamb, Lamb & Daughtridge and Gardner, Connor & Lee for plaintiff, appellant.*

*Robert A. Farris for defendant, appellee.*

RODMAN, J. Plaintiff assigns as error the order of Judge Fountain overruling his motion for an affirmance of the amended report of the referee for that no exceptions had been filed thereto within the time allowed by Judge Paul.

Judge Fountain had a right, in his discretion, to extend the time for filing the exceptions. The time limited in Judge Paul's order was not intended to have greater force than the statutory provision limiting the time to file exceptions. G.S. 1-195. It did not impair the authority given to Judge Fountain by G.S. 1-152 to extend the time. *White v. Price*, 237 N.C. 347, 75 S.E. 2d 244; *Dunn v. Marks*, 141 N.C. 232; *Timber Co. v. Butler*, 134 N.C. 50; *Kerr v. Hicks*, 131 N.C. 90; *Gilchrist v. Kitchen*, 86 N.C. 20.

The exception to Judge Fountain's order extending the time for de-

fendant to file exceptions is not sufficient to challenge the sufficiency of defendant's exceptions and the issue thereafter filed by him in support of his demand for a jury trial.

Plaintiff might have raised the question of defendant's right to a jury trial by excepting to the submission of any issue to the jury. We find no exception in the record sufficient to present this question. A party, by his failure to comply with prescribed procedure, may waive his right to a jury trial. Likewise, a party may waive his right by failing to object to the submission of an issue to the jury.

The statute providing for a compulsory reference, when it appears an accounting is necessary to determine the rights of the parties, rests on the assumption that this procedure will eliminate items not controverted and will enable the parties, by appropriate exceptions to the referee's findings, to bring into sharp focus the items which are in controversy.

As said by *Davis, J.,* in *Yelverton v. Coley,* 101 N.C. 248: "If this were not so, the tedious delay and confusion attending the investigation and examination of a long account by a jury, which it was the purpose of the reference to avoid, would be as great after the reference as before, thus rendering the reference a mockery."

A dissatisfied party is not permitted to take broadside exceptions to the findings. His exceptions, to be helpful and, therefore effective in a just settlement of the controversy—the court's objective, must be both specific and directed to a particular finding of fact. *Bartlett v. Hopkins,* 235 N.C. 165, 69 S.E. 2d 236; *Brown v. Clement Co.,* 217 N.C. 47, 6 S.E. 2d 842; *Gurganus v. McLawhorn,* 212 N.C. 397, 193 S.E. 844; *Cotton Mills v. Maslin,* 200 N.C. 328, 156 S.E. 484; *Booker v. Highlands,* 198 N.C. 282, 151 S.E. 635; *Ziblin v. Long,* 173 N.C. 235, 91 S.E. 837; *Ogden v. Land Co.,* 146 N.C. 443; *Wilson v. Featherstone,* 120 N.C. 446; *Driller Co. v. Worth,* 117 N.C. 515.

That the exceptions filed by defendant lack that definiteness necessary to present clearly defined issues is apparent. Finding No. 3 of the amended report incorporates by reference the itemized statement of account for the year 1954. That account consists of charges segregated in classes (1) for groceries purchased, (2) fertilizers, poisons, and seeds, (3) monies loaned defendant. The account details payments made from sales of cotton and tobacco. The crop sales were made by plaintiff and defendant.

The burden rested on plaintiff to establish the charges. Does defendant challenge the amount charged for groceries? We find no definite statement to that effect in defendant's evidence. To the contrary, there is evidence which may amount to an admission as to the correct-

ness of this item. The burden, of course, rested on plaintiff to prove the correctness of each controverted charge; but the burden rested on defendant to establish payment beyond those admitted by plaintiff. Defendant's evidence contains an inference that full credit has not been given for monies derived from the sales of the 1954 tobacco crop. If defendant's assertion of nonliability rests on his claim of additional payments, he had the burden of establishing those payments, and the court should have so instructed the jury.

The defendant testified that he can read. We find no evidence that he was illiterate. The law imposed no greater burden on one to keep an accurate record of debits and credits than on the other. It is not suggested that any trust relationship existsd. It was error to charge, even as a contention of the defendant, that the law imposed a duty on plaintiff to keep records "not only in an intelligent manner, but in a manner that would disclose and reveal that they were accurate and could be relied upon by the parties involved."

Plaintiff also excepted to the failure of the court to declare and explain the law arising upon the evidence in the case. The court charged the burden was on plaintiff "to satisfy you upon the evidence and by its greater weight that his allegations are true and correct." This statement of the law was followed by a resumé of the contentions of the parties, but nowhere did the court attempt to apply the law to the facts.

The provisions of G.S. 1-180 are mandatory. A failure to comply is prejudicial error. *Brooks v. Honeycutt, ante,* p. 179; *Glenn v. Raleigh,* 246 N.C. 469, 98 2d 913; *Keith v. Lee,* 246 N.C. 188, 97 S.E. 2d 859; *Hawkins v. Simpson,* 237 N.C. 155, 74 S.E. 2d 331; *Watson v. Tanning Co.,* 190 N.C. 840, 130 S.E. 833; *Wilson v. Wilson,* 190 N.C. 819, 130 S.E. 834.

The prejudicial effect of the failure to declare the law as applied to differing factual contentions is well illustrated by defendant's exception to Finding No. 6. Plaintiff testified he agreed to provide defendant with a tobacco harvester for which defendant would pay five cents per stick of tobacco harvested. The referee so found, and, finding defendant harvested 4,748 sticks, fixed the amount owing to plaintiff as rent at $237.40. Defendant excepted to this finding. As a witness he denied an agreement to pay five cents per stick. He asserted that he was only obligated to pay a fair rental value for the machine. What was the contract? The jury necessarily had to determine that question before it could determine the amount of the rent. If the jury found in accordance with plaintiff's testimony, supported as it was by other witnesses, the court should have directed the jury to fix

the rent at $237.40, or five cents per stick. This one item exceeds the amount which the referee found to be owing for the year 1955. Nowhere in the charge did the court advert to this controverted factual situation.

Because the exceptions failed to bring into focus the controverted items, the task imposed on the judge in charging the jury became more difficult; but that fact did not relieve him of the duty to declare and explain the law arising on the evidence.

New Trial.